(45 Misc. Rep. 28.)

## HERTZ v. McDERMOTT.

(Supreme Court, Special Term, Kings County. September Term, 1904.)

1. TRESPASS—INJUNCTION.
>  An owner of a small hotel sued a police captain in New York to restrain him from interfering with the conduct of the hotel. The evidence showed that the defendant kept policemen constantly in front of the hotel to call out to all who entered the hotel that it was a disorderly house, liable to be raided at any moment; that such policemen would also make the same announcement in the dining room of the hotel, and would sometimes eject persons from the hotel; that they would go through the hotel at night, and demand the names of the lodgers; but that no arrests were made during such period, nor any complaint to any magistrate against any person therein. *Held*, that an injunction should be granted.

Action by Samuel Hertz against Stephen McDermott to restrain defendant, a police captain, from trespassing upon and interfering with the running of plaintiff's hotel. Motion for injunction granted.

Louis H. Reynolds, for plaintiff.
John F. O'Brien, for defendant.

GAYNOR, J. A mere formal decision of a case like this does not suffice in the administration of justice. The plaintiff keeps a small hotel. Several persons have permanent lodgings there. It appears on inspection like all hotels in that and similar localities. The plaintiff has complied with all requirements of law, including the requirement that a hotel has to have bedrooms for lodgers, and is licensed by the state. He is entitled to police protection. The police may not do with him as they will. He is not their victim. They may not condemn him, or use interferences or threats or trespasses as a means of domineering over him, or of extorting weekly or monthly levies of money of him. They may only proceed against him according to law, the same as against any one else; and therein lies the purity and safety of our free government.

Since the beginning of last March, the defendant, a captain of police, has kept policemen constantly stationed at the entrance to the plaintiff's hotel. By his orders they call out to all who offer to enter it that it is a disorderly house, liable to be raided at any moment, and that all persons caught in it will be arrested and locked up. They also go inside and call out the same in the dining room. They follow persons in and order them out, and sometimes take hold of them and put them out. They do these things to men and women unaccompanied, and to men and women in company. They also go through the hotel at night, and arouse the lodgers and demand their names and that they give an account of themselves. These are the undisputed facts in the affidavit submitted. The defendant denies none of them, as incredible as they may seem. Meanwhile he and his policemen have arrested nobody at the hotel, and have made no complaint to a magistrate against anybody there. In fine, their acts have been lawlessness, pure and simple.

As an excuse for the defendant's conduct two reputable affidavits are produced that women solicit men up and down the street in the vicinity of the plaintiff's hotel, and sometimes go there with them. But this is no justification for the defendant's high-handed conduct. The law is ample to enable the police to stop such soliciting in the street. All soliciting women may be arested on the spot without a warrant and taken before a magistrate. A policeman, the same as any private citizen, has the right to arrest without a warrant any one whom he sees committing any criminal offense. If·the officers stationed at the plaintiff's place were put to patrolling the street and arresting all such women, there would very soon be no soliciting there. It cannot exist except by sufferance of the police. And if the defendant has evidence as he claims that the plaintiff is violating the law, his duty and the course prescribed to him by law is to cause the plaintiff's arrest and conviction. One such conviction would be more wholesome and do more to prevent such offenses than any amount of unlawful violence.

It may be that the plaintiff is breaking the law; but the law does not confer arbitrary power on·the defendant to deal with him. The defendant is not an official of unlimited powers. We have no such officials in this country. No police official can be suffered to take the law into his own hands. When he does so he becomes the most dangerous of criminals. He cannot decide any one to be guilty and proceed to destroy him as the defendant has done in this case. The plaintiff is entitled by our Constitution and laws to be accused before a court, and to be heard. If this hotel may be treated in this way by a police captain, then all our hotels, high and low, may be treated in the same way. But if one of our large hotels were to be treated in this same high-handed manner, by a police captain claiming the right to suppress and destroy it, all without any accusation or judicial hearing, on the ground that couples lodged there who were not married, the whole community would at once see the enormity and danger of such ignorant or criminal pretensions. All good citizens want to see outward order and decency enforced, and will support the police in doing it in the efficient manner which the law prescribes, but most of them know the inevitable result of extortion and blackmail which comes from police officials being suffered to go beyond their powers. That some zealous persons, to whom the word vice has only one meaning, do not see this is much to be regretted. They seem to be altogether unconscious that by encouraging police officials to resort to lawless force they are themselves aiding and abetting a far greater and more dangerous vice than any which·they are so zealous to suppress.

Police officials are as much bound to obey the law as are other people. The notion that the police may violate and trample on the law regulating their conduct, in their efforts or under pretence of efforts to make other people obey the law regulating theirs, is the most dangerous and pernicious that ever entered into the heads of men. If the conduct of this police captain should be suffered to become general, then our free government would be overthrown

and despotism would have taken its place. Officials should not be permitted to forget that our government, like all free governments, is a government of laws and not of men. The people do not put persons in office to do as they please, but to keep safely within the laws enacted for their guidance and for the limitation of their powers. Experience has shown from the beginning that it is far more important to the common weal that officials should not be suffered to transgress the laws limiting their powers, than that even all malefactors, let alone petty offenders, should be arrested and convicted. No one acquainted with the history of those guarantees and safeguards to individual liberty and property which we inherited from England, and with the long struggles of the people through which they were finally attained from those who exercised arbitrary power under a claim of divine right, can see them infringed by any official, high or low, without a feeling of resentment. They are the warp and the woof of our system of government, and of free government everywhere. They constitute the distinction between free government and despotism, and without them free government does not exist. It is important that crimes should be punished and prevented, but far more important that arbitrary power should not be tolerated. Officials who override the law and do as they please are guilty of a vice more dangerous to society than all the other vices and crimes combined. They pervert the government into one of men and not of laws. It was to guard against the recurrence of arbitrary power, and to the end that our government should forever be one of laws and not of men, i. e., a free government and not a despotism or government of arbitrary power, that it was divided into the three branches, legislative, executive and judicial, each with distinct and exclusive functions, as is expressed in all of our fundamental instruments of government in this country, but nowhere in such clear and felicitous language as in that clause of the Massachusetts bill of rights, which Rufus Choate said could not be read without a "thrill of sublimity," viz.:

"In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end that it may be a government of laws and not of men."

Lawless acts like those disclosed in this case of police officials in the city of New York have been used for years to extort millions of money, and enable such officials to retire one after another with great wealth. So called "raids" without warrants, and threats thereof, have been the efficient means of effecting such extortions. One of the affidavits before me discloses that Police Captain Schmittberger made a full disclosure on oath before a legislative investigating committee in 1894 (vol. 5, p. 5359) of how he had extorted money right and left for years from the proprietors of places, and divided it with his superior officers, and that such conduct was general among police officials. Notwithstan...

ing this revelation he is not only still on the police force, but has been promoted to be an inspector of police. This affidavit purports to identify the defendant as the same Officer McDermott who, according to Schmittberger's testimony, did the actual collecting for him, but I doubt its accuracy in that particular.

The learned assistant corporation counsel assured the court that the defendant was a good man and could be trusted not to use his lawless methods to extort money. If that were so, he would still be setting a bad example for police officials who are not so good as he is. But the only answer needed is that there is no official in this country, however high or good, who can be suffered to destroy our system of government. When or where was free government ever overthrown by unlawful official violence, gradually or all at once, except under a pretence of the public good?

To deny this injunction would be to permit the defendant to ruin the plaintiff by unlawful force. It is urged that the plaintiff is not entitled to the protection of a court of equity because his own hands are not clean, as the phrase is. If there be anything in the suggestion that a policeman, any more than any one else, may not be prevented by a court of equity from lawlessly destroying a man whose hands are not clean, the plaintiff is at least entitled to a trial of the question whether he is such an outlaw, and in the meantime to be protected. Of what avail would a trial be to him if he may be destroyed in advance?

The motion for an injunction until the case be tried is granted.